# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMAS CLEMENTE CHAVEZ,<br><br>    Petitioner,<br><br>   v.<br><br>GAIL LEWIS,<br><br>    Respondent.<br>_____/ | 1:02-cv-05320 OWW DLB (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS FOLLOWING EVIDENTIARY HEARING CONDUCTED ON MARCH 30, 2009 |

<u>RELEVANT HISTORY</u>

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On June 4, 2004, the undersigned issued a Findings and Recommendation denying the instant petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Court Doc. 25.) On September 29, 2004, the Findings and Recommendation was adopted in full, judgment was entered in favor of Respondent, and the Court denied to issue a certificate of appealability. (Court Docs. 27, 28, 29.)

Petitioner filed a notice of appeal on October 7, 2004. (Court Doc. 30.) On December 27, 2004, the Ninth Circuit Court of Appeals granted the request for a certificate of appealability with respect to the following issues: "(1) whether the trial court applied the correct standard for bias under *Batson v. Kentucky*, 476 U.S. 79 (1986); and (2) whether the prosecutor's peremptory challenges of four Hispanic jurors violated *Batson*. *See* 28 U.S.C. § 2253(c)(3)." (Court Doc.

1

1 | 34.)  After taking the matter under submission without oral argument, the Ninth Circuit reversed

2 | and remanded the action in an unwritten opinion on July 25, 2006.  (*See* Court Doc. 39.)

3 | On May 15, 2008, the Court set a briefing schedule for supplement briefing in light of the

4 | Ninth Circuit's remand order.  (Court Doc. 41.)

5 | On August 20, 2008, Respondent filed a supplemental briefing, and on September 3,

6 | 2008, Petitioner filed a supplemental brief.  (Court Docs. 44, 45.)

7 | On November 17, 2008, the Court set an evidentiary hearing to address Petitioner's

8 | Batson claim.  (Court Doc. 46.)

9 | On March 30, 2009, the undersigned conducted an evidentiary hearing and heard

10 | testimony from the prosecutor and Petitioner.

11 | Thereafter, on April 30, 2009, Respondent filed a post-evidentiary hearing brief, and

12 | Petitioner filed a post-evidentiary brief on May 6, 2009.  (Court Docs. 50, 51.)

STATEMENT OF FACTS

On April 8, 1999, in the Fresno County Superior Court, a jury found Petitioner guilty of maliciously discharging a firearm at an inhabited dwelling house in violation of California Penal Code section 246.  In a bifurcated proceeding, Petitioner admitted that he had two prior convictions and had served two prior prison terms (Cal. Penal Code §§ 1170.12, 667.5(b)).  On May 13, 1999, Petitioner was sentenced to a term of 25 years to life pursuant to California's Three Strikes law.  Petitioner appealed his conviction to the Fifth District Court of Appeal.  The judgment was affirmed on April 24, 2001.  Petitioner filed a petition for review in the California Supreme Court, which was summarily denied on July 11, 2001.

Because the facts of the underlying offense are not relevant to the disposition of the issue before this Court, no further discussion is necessary.

//
//
//
//
//

# DISCUSSION

I. Prior Proceedings

    A. Trial Court

        1. Voir Dire

The prosecutor exercised five peremptory challenges, four of which were the following Hispanic jurors: Melinda Martinez, Mario Moreno, Dolores Lara, and Carolyn Martinusen.[1]

July selection began on April 5, 1999. The court called 18 prospective jurors which included five Hispanics, including Mario M. and Melinda M. (The other Hispanics were Frank Zamora, Mark Santillanez, and Phyllis Juarez who were peremptorily challenged by defense).

The trial court asked each juror individually to answer orally to written questions relating to general personal information, such as occupation, marital status, education, and leisure activities. Each of the attorneys were also allowed to ask follow-up questions.

With regard to this first panel of jurors, the prosecutor passed for cause but exercised a total of three peremptory challenges against: Mario M., Melinda M., and Robert Wilson.

The clerk called seven new prospective jurors, including one Hispanic, Dolores L. The prosecutor initially passed on peremptory challenges, and defense counsel peremptorily challenged a non-Hispanic juror. The prosecutor then peremptorily challenged Dolores L, who was Hispanic. At this point, defense counsel made a Wheeler motion, but agreed to continue the motion until break, after exercising additional peremptory challenges.

The clerk then called seven more prospective jurors, including three Hispanics: Carolyn M, juror No. 35, and juror No. 37. After questioning Carolyn M. regarding her prior jury service in a criminal case (that case resulted in a deadlock due to apparent racial views of three of the jurors who wanted to ignore evidence presented-however, Carolyn M. was not one of the holdout jurors), the prosecutor passed four times, and then challenged Carolyn M. After excusing Mrs. Martinusen, the trial court heard the Wheeler motion.

//

---

[1] The fifth and only non-Hispanic juror excused by peremptory challenge by the prosecutor was Robert Wilson, who was a friend of defense counsel.

3

## 2. Trial Court Ruling on Wheeler Motion

The trial court denied the motion stating, in pertinent part:

> The only thing I think can be said in terms of the motion that has been made here, along the line of other relevant circumstances, is the fact that there was some relatively obvious reason for the challenge to [Robert W.], given his apparent familiarity with [defense counsel]. But save and except for that, there are- -there is no showing of other relevant circumstances here supporting this motion. I would note as well, as I think it is of some importance, that at the time the motion was originally brought to the attention of the Court, that by my notes, there were two persons with Hispanic surnames, at least, who still remained as prospective jurors who had been the subject of questioning, or about to be, that would be [Phyllis J.] and [Carolyn M.], giving the moving party the benefit of the doubt on [the latter's] surname. And there had been five that had been excluded already at that point, being three by the prosecution, which have been referenced here, and two by the defense, being [Mark S.] and [Frank Z.]
>
> That means, from a fairly mathematical point of view, that there were seven, at least at that point in time, persons with Hispanic surnames who were prospective jurors, and less than half of those seven had been excluded by the People. Later on, of course, when this was finally taken up, there are two Hispanic surname individuals who remain. Of course, the People have since exercised the challenge as to an additional Hispanic surname. And either way you cut it, it is less than 50 percent of those prospective jurors that have been challenged by the People.
>
> So purely on the basis alone of the relative numbers of individuals from that group association, the- -nothing about that, in and of itself, satisfies any kind of prima facie showing, from the Court's point of view, that the exercise of these challenges is being directed at individuals that are either Hispanic or have Hispanic surnames.
>
> So for all these reasons, I find that the prima facie showing under Wheeler has not been made.

(RT 709-710.)

### B. State Appellate Court

The Fifth Appellate District Court reviewed the record and found that three of the four Hispanic prospective jurors removed by peremptory challenges shared one characteristic in common: lack of leisure time. In reaching its decision, the court held:

> A juror's crowded schedule is a legitimate concern to a prosecutor who was trying a case for the second time due to a previously hung jury.
>
> Melinda M. expressed that she really did not have leisure time or "pleasure" time. She supported this statement by pointing out that she was a clerical worker, was currently married, and had three daughters, ages 15, 14, and 11. Having three children within four years of each other (two of whom were teenagers), the demands on Melinda M.'s time were substantial, leaving little time

4

for leisure activities.

Mario M. worked in retail and was majoring in Japanese linguistics at a local university. Although he stated that he played around with computers in his spare time, a reasonable attorney could infer that a person who is working and attending a university at the same time has limited leisure time. The trial took place in April 1999, during the spring semester. Thus, Mario M.'s statement that he did have leisure time was not objectively verifiable.

Similarly, Dolores L. was working for Human Services and pursing university studies to become a teacher. Although she stated that she enjoyed creative writing and working with computers as leisure activities, her dual vocational and scholastic oblig

Although Carolyn M. also indicated that she did not have much leisure time, aside from doing housework, her lack of leisure time was not objectively verifiable based on the facts she disclosed during voir dire. However, she had recently served on a criminal jury that resulted in a deadlock due to the racial views of three jurors who wanted to ignore evidence presented. Both the prosecutor and defense counsel were concerned about this experience and questioned [her] extensively. Although [she] was not one of the holdout jurors, and expressed her disappointment that these three jurors had not revealed their biases during voir dire, a reasonable prosecutor could be concerned that Carolyn M. was not able to work through the deadlock by persuading the holdouts to evaluate the case solely based on the evidence. It would also be reasonable to believe that the jury Carolyn M. was a part of reacted too strongly to racial bias by confronting the holdout jurors with "'You weren't supposed to do that. You're not supposed to base it upon that.'"

[Petitioner] argues that an absence of leisure time could not have been a legitimate reason for challenging the Hispanic jurors because Lynn A., a non-Hispanic prospective juror, also expressed that he had no leisure time, yet the prosecutor did not challenge him. Lynn A.'s lack of leisure time was not objectively verifiable. He was a truck driver, and had been for 25 years, had two grown children (ages 40 and 41) and appeared to have no other time commitments. Moreover, [Petitioner's] argument unduly emphasizes a comparison of excused group members and unexcused nonmembers with similar characteristics. . . .

We conclude that substantial evidence supports the court's ruling that defendant had failed to establish a prima facie case of purposeful discrimination. The record discloses grounds that suggest a nondiscriminatory basis that might reasonably explain the prosecutor's challenges against the jurors in question.

(Exhibit B, Court Doc. 18, Opinion at 15-16.)

C. <u>Federal Habeas Corpus Proceedings</u>

Petitioner filed the instant federal petition for writ of habeas corpus on March 22, 2002. Petitioner filed an amended petition on October 7, 2002. Petitioner alleged that (1) the trial court erred in failing to find a prima facie case of group discrimination against Hispanic jurors; and (2) the definition of reasonable doubt read to the jury violated his due process rights.

5

| | |
|---|---|
| 1 | Respondent filed an answer on February 10, 2003. Petitioner did not file a traverse. |
| 2 | On June 4, 2004, the Court issued Findings and Recommendations to deny the petition on |
| 3 | the merits. (Court Doc. 25.) Petitioner filed objections on June 18, 2004. (Court Doc. 26.) On |
| 4 | September 29, 2004, Judge Wanger adopted the Findings and Recommendation in full and |
| 5 | judgment was entered in favor of Respondent. (Court Docs. 28, 29.) |
| 6 | Petitioner filed a notice of appeal. On July 25, 2006, in an unpublished memorandum, |
| 7 | the Ninth Circuit Court of Appeals reversed the judgment and remanded the case. Chavez v. |
| 8 | Lewis, 191 Fed.Appx. 562, 563, 2006 WL 2060654 (July 25, 2006). Relying on Johnson v. |
| 9 | California, 545 U.S. 162 (2005), issued after this Court rendered its decision, the Ninth Circuit, |
| 10 | held that the state appellate court applied the wrong standard of review with regard to Petitioner's |
| 11 | Wheeler/Batson challenge.[2] Id. Therefore, the Ninth Circuit concluded the state court's |
| 12 | disposition of the claim was not entitled to deference under section 2254(d), and the claim must |
| 13 | be reviewed de novo.[3] Id. The Court held "[r]eviewing the decision de novo, it is clear that the |
| 14 | petitioner established a prima facie case of discrimination. We cannot proceed past the first step |
| 15 | of the *Batson* inquiry, however, because the existing record does not include any explanation of |
| 16 | the strikes by the prosecutor." Id. at 563-564. Accordingly, the case is presently before the Court |
| 17 | upon remand from the Ninth Circuit for consideration of Petitioner's Batson challenge. |
| 18 | Upon remand, this Court ordered supplemental briefing and held an evidentiary hearing. |
| 19 | II.    Analysis of Batson Claim |
| 20 | A.    Applicable Law |
| 21 | In Batson v. Kentucky, 476 U.S. 79, 89 (1986), the United States Supreme Court set out a |
| 22 | three-step process in the trial court to determine whether a peremptory challenge is race-based in |
| 23 | violation of the Equal Protection Clause. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769 |

---

[2] The California standard, applied by the trial court in this case, required the moving party "to make a showing of a strong likelihood that peremptory challenges are being used to exclude individuals based upon some association which is cognizable." (RT 708.)

[3] Respondent objects to the Ninth Circuit's conclusion that the state court's determination is not entitled to the deference ordinarily mandated under AEDPA. (Post-Evidentiary Hearing Brief, at 4.) The Court notes Respondent's objection, but finds it is bound to follow the Ninth Circuit's remand order.

6

(1995). First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. Id. That is, the defendant must demonstrate that the facts and circumstances of the case "raise an inference" that the prosecution has excluded venire members from the petit jury on account of their race. Id.

If a defendant makes this showing, the burden then shifts to the prosecution to provide a race-neutral explanation for its challenge. See id. This step "requires evidence of the prosecutor's *actual* reasons for exercising the peremptory challenges." Paulino v. Harrison, 542 F.3d 692, 699 (9th Cir. 2008).[4] "Evidence of a prosecutor's actual reasons may be direct or circumstantial, but mere speculation [or inference] is insufficient." Id. at 700 (citations omitted.)

If race-neutral reasons are presented, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." Batson, 476 U.S. at 98. The burden of persuasion remains with and never shifts from the opponent of the strike. Purkett, 514 U.S. at 768.

If the state fails to meet its burden of production at step two then "the prima facie showing plus the evidence of discrimination drawn from the state's failure to produce a reason- will establish purposeful discrimination by a preponderance of the evidence in most cases at step three of Batson. Indeed, in such cases, there is no race-neutral evidence to weigh." Paulino, 542 F.3d at 703.

However, "[w]here the State has put forward a race-neutral reason at step two, the court evaluates "all relevant circumstances," at step three, including whether the state's stated reasons are pretextual, to decide whether a preponderance of the evidence establishes purposeful discrimination." Id. at 702.

"When there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it." Johnson v. Vasquez, 3 F.3d 1327, 1331 (9th Cir. 1993). The court must consider the record as a whole and each explanation in order to determine

---

[4] For instance, if the prosecutor can only later speculate about the reasons for striking the potential jurors, the State will have trouble meeting its burden of production. See e.g. Paulino v. Harrison, 542 F.3d at 699.

7

whether an invidious discriminatory purpose may be inferred from the totality of the relevant facts of the case. Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006) (citing Hernandez v. New York, 500 U.S. 352, 363 (1991).) Such consideration may include comparative juror analysis to reveal any disparate treatment. Kesser, 465 F.3d at 360 (citing Miller-El, 545 U.S. 231 (2005)). Comparative analysis requires determining if other nonchallenged jurors possess any of the characteristics of those on which the prosecutor challenged in the protected group. Snyder v. Louisiana, 522 U.S. 472, 485 (2008). In Snyder v. Louisiana, 552 U.S. 472 (2008), the Supreme Court stated that the third step of Batson "involves an evaluation of the prosecutor's credibility," and "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." Id. at 1208, 1213 (internal quotation marks and citation omitted); see also Hernandez, 500 U.S. at 365 ("the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge"); Lewis v. Lewis, 321 F.3d at 830 (quoting McCain v. Prunty, 217 F.3d 1209, 1220 (9th Cir. 2000)) ("[a] finding of discriminatory intent turns largely on the court's evaluation of the prosecutor's credibility").

B. Challenged Jurors

At the evidentiary hearing, former prosecutor Jeffrey Hamilton, appeared at the hearing and testified that he specifically remembered Petitioner's case for a number of reasons, but mainly because it was particularly egregious and it resulted in a hung jury during the first trial-11 jurors to 1 for guilt. (Evid. Hearing Transcript, at 8.) The holdout juror did not vote for guilt because her uncle was sent to prison and she refused to send anyone else to prison regardless of the evidence presented. (Id.)

Petitioner does not dispute that Hamilton provided race-neutral reasons for exercising his peremptory challenges against each of the prospective jurors, and presents the issue to this Court to weigh the evidence and rule on whether Petitioner has made a sufficient showing for relief. (Post-Evidentiary Hearing Brief, at 2.) In their briefing, neither party engaged in comparative analysis or any other independent review of the entire record.

///

1. Juror Mario Moreno

With respect to Mr. Moreno, the prosecutor stated that as a general rule he did not want students, teachers, or individuals without children on the jury panel. (Hearing Transcript, at 11.) Mr. Moreno read the answers to the questionnaire stating, "I have been [in] Fresno for the last 10 years, not married, no children. Graduated from Hoover High School. Currently enrolled in Fresno State giving me Japanese linguistics, been working in the major course for the past 10 years in retail. And leisure time just playing around the computers." (Transcript of Voir Dire-April 5, 1999, at 77.) The prosecutor felt Mr. Moreno did not express good grammar, had no children, was not married, was a student, and did not have substantial life experience. (Evidentiary Hearing Transcript, at 11-12.) Petitioner also opined that he believed Mr. Moreno to be in his late-twenty's. (Id. at 35.) Comparative analysis supports the prosecutor's justification as all of the remaining jurors were not students, were remarried, had children, and had substantial life experience. Thus, based upon a review of the record, including comparative analysis, the prosecutor's justification is persuasive and not pretextual.

2. <u>Juror Melinda Martinez</u>

The prosecutor excused Ms. Martinez because she indicated that her ex-husband had served a prison term. This was important to the prosecutor because the first jury hung because the one juror had an uncle who was in state prison and he neglected to question the jury panel during voir dire about any family member having had any prison or jail experience. (Id. at 12.) Although the two alternate jurors indicated that they had relatives who served prior prison terms, considering the record as a whole, including the prosecutor's demeanor credibility at the evidentiary hearing, there is no showing of purposeful discrimination. The first alternate indicated that her son-in-law had previously served a prison term prior to becoming her son-in-law. The second alternative indicated that her husband had five brothers, and her husband told her that one of them had served a prison term approximately forty years ago. While it is true that the two alternate jurors had relatives who had previously served prison terms and none of the jurors had any first hand knowledge of the circumstances of the prison terms, given that these two jurors were alternates and did not maintain the same level of relationship of former spouse with children-as did Ms. Martinez with her ex-husband, the Court finds that Petitioner has not

9

established purposeful discrimination based on racial bias or pretext.

### 3. Juror Dolores Lara

The prosecutor felt that Ms. Lara was not a good candidate because she was a student, a teacher, not married, had no children, and worked for human services. He felt that she was very liberal-minded and not a favorable juror for the prosecution. (Id. at 13.) Although two other seated jurors were not married and had no children, neither of them, or any other juror, worked in a human services department, and a juror's occupation may provide a legitimate basis for a peremptory challenge. See Cook v. LaMarque, 593 F.3d 810, 818 (9th Cir. 2010) (citing United States v. De Gross, 960 F.2d 1433, 1438 n.8 (9th Cir. 1992). In addition, Ms. Lara, like Mr. Moreno, was a student and no other students served on the juror. Therefore, comparative analysis supports the finding that the prosecutor's justification was sincere and legitimate based on the record in this case.

### 4. Juror Carolyn Martinussen

With regard to Ms. Martinussen, the prosecutor initially pointed out that he disagreed with the defense's impression that she was Hispanic, and the trial judge also disagreed that she was Hispanic. In any event, the prosecutor stated that he excused her because she sat on a hung jury the previous year, and because the first trial hung, he did not want someone who had just sat on a hung jury in this case. (Id. at 15.) Although one other seated juror had served on a prior criminal trial which resulted in a hung jury, it occurred over twenty years prior and there was no expression of dissatisfaction with the process. Whereas, Ms. Martinussen had just served on a hung jury in the proceeding year and expressed frustration with the process stating:

> The frustration came more from the jurors themselves. It was found out later on in the jury room that they didn't answer their questions honestly when they were being screened. And they had - - there were three members, they had more racial tendencies than what they admitted to, and it didn't really come out until we were back there deliberating. And then the rest of us were like, "You weren't supposed to do that. You're not supposed to base it upon that." But they wanted to stick to what their vote was.
>
> [DEFENSE COUNSEL]: Did that surprise you?
>
> [Ms. Martinussen]: Yes, it did. I mean, because of the whole process here and everything you have to go through, you would have thought that they would have - - I mean, you have to be honest with how you are in order for him to get a

fair - - or the defendant to get a fair trial.

(Transcript of Voir Dire-April 6, 1999, at 46.)

Therefore, this juror is not similarly situated for purposes of comparative analysis and there is no showing the justification was a pretext for racial discrimination.

## CONCLUSION AND RECOMMENDATION

After a de novo review of the record, the Court finds Petitioner's claim to be without merit. In sum, this case did not involve racial discrimination, the victims and witnesses in this case were also of Hispanic decent, the prosecutor passed on exercising a peremptory challenge several times before he excused Moreno and Martinez, once before he excused Ms. Lara and three times before excusing Ms. Martinussen, and comparative analysis does not reveal purposeful discrimination. Thus, after reviewing the entire record, including the evidence presented at the evidentiary hearing and the voir dire transcript for comparative analysis, Petitioner has not met his burden of "proving purposeful racial discrimination." Johnson, 545 U.S. at 168.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

//
//
//
//
//
//

Within fourteen (14) days after being served with a copy, any party may file written objections

| | |
|---|---|
| 1 | with the court and serve a copy on all parties.  Such a document should be captioned "Objections |
| 2 | to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served |
| 3 | and filed within seven (7) days after service of the objections.  The Court will then review the |
| 4 | Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that |
| 5 | failure to file objections within the specified time may waive the right to appeal the District |
| 6 | Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). |

IT IS SO ORDERED.

Dated: **March 17, 2010**         /s/ **Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE